█ In the Matter of VINCENT R. BALLETTA, JR., Respondent-Appellant, v SECRETARY OF STATE OF THE STATE OF NEW YORK et al., Respondents, and ARTHUR D. SPATT, Appellant-Respondent. CONSERVATIVE PARTY OF NASSAU COUNTY, Intervenor-Appellant-Respondent.—In a proceeding, *inter alia,* to vacate the nomination of Arthur D. Spatt by the Conservative Party for the public office of Justice of the Supreme Court of the State of New York for the Tenth Judicial District, (1) the petitioner appeals from an order of the Supreme Court, Nassau County, dated October 6, 1978, which granted the motion of the Conservative Party for leave to intervene and (2) the petitioner and respondents Spatt and the Conservative Party appeal from a judgment of the same court, dated October 6, 1978, which (a) vacated the nomination of Spatt and (b) directed that the Conservative Party Convention for the Tenth Judicial District be reconvened on or before October 16, 1978. Order affirmed, without costs or disbursements. Judgment reversed, on the law and the facts, Judgment reversed, on the law and the facts, without costs or disbursements, application denied and the nomination of Arthur D. Spatt is declared to be valid. In our opinion, the nomination of Arthur D. Spatt as the Conservative Party candidate for Justice of the Supreme Court, Tenth Judicial District, was valid. The relevant facts as stipulated by the parties are as follows: "4. That at the beginning of the convention the chairman announced that the procedure would be that the names of all candidates would be placed in nomination; that there would then be a vote on the nomination to fill specific vacancies, with the person who received the highest vote being the person designated by the convention for that vacancy; that person would then drop out and the convention would proceed to consider the next vacancy; that this procedure was not put to a vote by the chairman, nor did any delegate or alternate entitled to do so ask for a vote on the proposition. That there are delegates, who, if called to testify by the petitioner would testify that they did not hear the convention chairman so state the procedure above. That there are also delegates and alternates who if called by the respondent would testify that the procedure as above stated was what was stated by the convention chairman at the beginning of the convention. 5. That the first vacancy was filled by a unanimous vote for Peter Cohalan, with certain abstentions *[sic]*. That the second vacancy was filled by a vote of 49 for Robbins and 1 for Balletta, with a few abstentions *[sic]*. That the third vacancy was filled by a vote of 48 for Murphy and 1 for Balletta and 15 abstentions *[sic]*. That the vote for the fourth vacancy was 25 for Arthur [D.] Spatt, 22 for Vincent Balletta, four for Eli Mellan and 13 abstentions *[sic]*. That there was no vote to make any of the nominations unanimous nor was any objection made by any delegate or alternate to the vote or the procedure used, nor was there any request for a further roll call vote. And that there was no objection to the last roll call vote. * * * 7. That the convention of the Conservative Party for the Tenth Judicial District was held on September 20, 1978 pursuant to a call issued by James Drew who was duly designated to do so by the chairman of the Conservative Party of New York State by means of a certificate". Up until the convening of the judicial district convention the procedure laid down by the rules and regulations of the Conservative Party of the State of New York governed. However, in our view, once the convention was legally constituted it became an independent body and its actions were automatically controlled by the Conservative Party rules and regulations *only* to the extent that the statutes governing conventions generally, and judicial conventions particu-

larly, expressly provide. An examination of those provisions of the Election Law dealing specifically with judicial conventions specify particular areas which must be governed by party rules (see Election Law, §§ 6-106, 6-124, 6-126). However, these statutory provisions, significantly, fail to state that the number of votes needed to nominate a person for the office of Justice of the Supreme Court must be governed by the rules and regulations of the political party. Accordingly, with respect to this issue, the rules and regulations of the Conservative Party, which require a majority vote to nominate a person for the office of Justice of the Supreme Court are not binding on the convention unless they are expressly or impliedly adopted by said convention (see *Matter of Monroe v New York State Bd. of Elections,* 35 NY2d 738). In this case there was no objection by any delegate to the procedure outlined by the chairman of the judicial convention that "the person who received the highest vote" (i.e., a plurality) would be "the person designated by the convention for that vacancy". Since Spatt was nominated on that basis, his nomination should be upheld. Suozzi, J. P., Shapiro and Margett, JJ., concur; Gulotta, J., concurs as to the affirmance of the order, but otherwise dissents and votes to affirm the judgment, with the following memorandum: Section 4 of article 8 of the rules and regulations of the Conservative Party of the State of New York, entitled "Judicial District Conventions", specifically provides that "All nominations at *any* convention shall be made by a *majority* vote of the delegates present and voting and, if a majority of the delegates present and voting shall vote not to nominate any candidate to fill a given vacancy, then no candidate shall be nominated to fill that vacancy" (emphasis supplied). In my opinion, this section is controlling, must be strictly complied with, and cannot be amended or overridden by a judicial district convention. Any change can be brought about only in accordance with article 11 of the Conservative Party's rules, which provides: *"Article 11 Amendment of Rules and Regulations* Section 1. These rules and regulations may be amended, changed or repealed at any meeting of the state committee, by a majority vote of the members of such committee present at a meeting at which there is a quorum, provided, however, that a copy of the proposed amendment or amendments shall be sent with the notice of the meeting at which such amendment is to be proposed. Such notice shall be mailed to the last known post office address of each member of the state committee and shall be post-marked not less than five days before the date of such meeting. Section 2. Amendments to these rules and regulations may be proposed by the state executive committee or by fifteen of the duly elected members of the state committee. Such proposed amendments shall be filed with the secretary not less than fifteen days before any regular or special meeting of the state committee. The secretary shall mail a copy of any proposed amendment to each of the members of the state committee together with the notice of the meeting, and such amendments shall come before such regular or special meeting for consideration and action. Section 3. Whenever an amendment to these rules and regulations is properly proposed in the notice of any meeting of the state committee, the state committee may at that meeting consider and act upon any amendment dealing with the same subject matter as the proposed amendment, as well as the amendment specifically proposed." A nomination in violation of section 4 of article 8 of the rules is a nullity. However, assuming, *arguendo,* that the delegates, acting in assembly, *did* have the power to vary section 4 of article 8 of the rules and could nominate by plurality vote, it is my further opinion that Special Term correctly determined that there was never any agreement to do so in the instant case, as

the stipulation of facts reveals that although the convention chairman may have announced at the outset that a "plurality" voting procedure was to be followed, there was no vote taken on the question and "there are delegates, who, if called to testify * * * would testify that they did not hear the convention chairman so state". On these facts, the majority's finding of an agreement, based on the failure of any convention delegate to call for a vote, is misplaced. Having proceeded under a misapprehension of its powers, the convention should be reconvened and a new vote taken as to the fourth judicial vacancy. The candidates selected to fill the first three vacancies were nominated by a majority vote and, accordingly, their nominations should not be disturbed.